**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0658n.06

**Case No. 19-5999**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>MARCUS BOYD,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Defendant-Appellant.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

**FILED**
Nov 17, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

O P I N I O N

BEFORE: COLE, Chief Judge; McKEAGUE and WHITE, Circuit Judges.

COLE, Chief Judge. Marcus Boyd appeals the district court's denial of his motion for a sentence reduction under the First Step Act (the "Act"). The Act gives courts discretion to apply modifications to crack cocaine penalties from the Fair Sentencing Act of 2010 (the "FSA") to defendants convicted of relevant offenses who were sentenced before 2010. The district court concluded in a brief order that a sentence reduction would not be appropriate in Boyd's case given that the FSA would not in practice modify the sentencing range for his cocaine offense and that his life sentence was independently driven by two related homicide convictions. On appeal Boyd argues that the district court erred in finding him ineligible for First Step Act relief and that the court abused its discretion in denying his motion without a more detailed opinion. Because the district court ultimately denied Boyd's motion on the merits, regardless of any eligibility finding,

and because the circumstances of Boyd's particular case did not require a more thorough explanation of the court's decision, we affirm the district court's denial of Boyd's motion for a sentencing reduction.

## I. BACKGROUND

In the late 1990s, Marcus Boyd oversaw a drug-trafficking gang that distributed large quantities of marijuana and crack cocaine in Memphis, Tennessee. Boyd's gang would procure powder cocaine and then convert it to cocaine base ("crack" cocaine). In March 1999, two of Boyd's men told him they lost $50,000 on a cocaine-procurement trip to Texas. In retaliation, Boyd arranged for and assisted in their murder.

In 2000, Boyd was indicted, tried, and convicted on the following counts, with the following statutory sentencing ranges:

- Count 1: Conspiracy to possess and distribute cocaine and cocaine base, 21 U.S.C. § 846 — 10 years to life;

- Count 2: Conspiracy to possess and distribute marijuana, 21 U.S.C. § 846 — 5 to 40 years;

- Count 3: Discharging firearms during and in relation to a drug-trafficking offense, 18 U.S.C. § 924(c) — no less than 10 years, consecutively to any related offense;

- Counts 4 & 5: Causing death through the use of firearms during and in relation to a drug-trafficking offense, 18 U.S.C. § 924(j) — up to life.

Importantly, Boyd's presentence report ("PSR") and jury verdict form make clear that the § 846 conspiracy in Count 1 was supported by two independent underlying offenses. On the verdict form, the jury specifically found that Boyd had conspired to distribute at least 5 kilograms of powder cocaine and at least 50 grams of crack cocaine. These drug quantities and their associated sentencing ranges make clear that Boyd's two underlying offenses, both of which could independently support his § 846 conspiracy conviction, were violations of 21 U.S.C. § 841(b)(1)(A)(ii) and (A)(iii), possession with intent to distribute 5 kilograms or more of cocaine

and 50 grams or more of cocaine base, respectively. *See* 21 U.S.C. § 841(b)(1) (2000). The PSR notes that Boyd oversaw the distribution of at least 1.5 kilograms of crack cocaine by at least one of his gang members.

Per the U.S. Sentencing Guidelines ("Guidelines"), the PSR grouped Boyd's Count 1 cocaine offense with the related offenses of Count 2 (marijuana distribution) and Count 4 (one of the first-degree murder offenses). The group offense level was 43, based on the level of the highest constituent offense, murder. Though Boyd received sentencing enhancements for relevant conduct and his second homicide count, his combined offense level remained at 43, the maximum level of a guideline recommendation, corresponding to life imprisonment. In January 2001, Boyd was sentenced to life on Counts 1, 4, and 5; forty years on Count 2 (concurrent); and 10 years on Count 3 (consecutive). Boyd appealed, but this court affirmed his sentence. *See United States v. Brown*, 54 F. App'x 201, 211 (6th Cir. 2002).

Between Boyd's conviction and this present appeal, Congress passed the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372 (2010), and the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Notably for Boyd, section 2 of the FSA increased from 50 grams to 280 grams the quantity of crack cocaine that triggers a mandatory 10-year minimum sentence under 21 U.S.C. § 841(b)(1)(A)(iii), "thereby reducing (but not eliminating) the sentencing disparity between powder-cocaine and cocaine-base offenses." *United States v. Ware*, 964 F.3d 482, 485–86 (6th Cir. 2020); *see* FSA § 2(a).

In 2018 the First Step Act made the FSA's modifications of crack cocaine penalties available to defendants who were sentenced prior to the FSA's enactment. As relevant here, the Act specified that "[a] court that imposed a sentence for a covered offense may, on motion . . . , impose a reduced sentence as if sections 2 and 3 of the [FSA] were in effect at the time the covered

offense was committed." First Step Act § 404(b). The Act defined a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the [FSA], that was committed before August 3, 2010." *Id.* § 404(a). Crucially, though, "[n]othing in [section 404] shall be construed to require a court to reduce any sentence pursuant to this section." *Id.* § 404(c).

In July 2019, Boyd moved pro se for a reduced sentence for his crack cocaine offense pursuant to the Act. He also asked for a new presentence report and a full hearing. The next month, the district court denied Boyd's motion without a hearing or new presentence report and before the government filed any response.

The district court's order was brief. It reiterated Boyd's multiple offenses, emphasized that the Fair Sentencing Act does not actually change the statutory penalty for Boyd's cocaine conspiracy charge, and then noted that Boyd's related firearm and homicide convictions made him an "inappropriate" candidate for a reduced sentence under the First Step Act. Boyd appealed the denial to this court. We have jurisdiction under 28 U.S.C. § 1291. *See United States v. Boulding*, 960 F.3d 774, 778 (6th Cir. 2020).

## II. ANALYSIS

### A. Standard of review

"The First Step Act ultimately leaves the choice whether to resentence to the district court's sound discretion." *United States v. Flowers*, 963 F.3d 492, 498 (6th Cir. 2020) (quoting *United States v. Beamus*, 943 F.3d 789, 792 (6th Cir. 2019)). This court thus reviews a district court's denial of an eligible defendant's First Step Act motion for abuse of discretion, both with regard to its procedural and substantive reasonableness. *See Ware*, 964 F.3d at 487. The court further

reviews "factual findings for clear error and its legal conclusions de novo." *Id*. (quoting *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019)).

## B. Eligibility determination and harmless error

Both parties claim that the district court found Boyd ineligible for First Step Act relief (that is, that he did not commit a "covered offense"), and Boyd argues this finding was in error. It is not clear, however, what finding, if any, the court made as to eligibility. Nowhere in its order does the district court expressly find Boyd "eligible" or not under the First Step Act, conclude that he did not commit a "covered offense" under § 404(a), or otherwise indicate that Boyd does not even qualify for consideration of a discretionary sentence reduction under the Act. Notwithstanding this uncertainty, because we conclude the court ultimately denied Boyd's motion on the merits, any potential error regarding ineligibility was harmless. *See Flowers*, 963 F.3d at 497–98.

Though brief, the language and reasoning of the district court's order indicates an ultimate assessment on the merits. In its introduction the order states that the court "finds that Defendant's sentence remains appropriate." Order, R. 571, PageID 538. In its analysis, the court considered the overall gravity of Boyd's drug-related conduct and noted his other simultaneous sentences, which the First Step Act leaves untouched, before concluding that First Step Act relief was "inappropriate" in Boyd's case. *Id.* at PageID 540. This indicates a discretionary denial rather than a finding of mandated ineligibility. Indeed, courts in this circuit consistently use the term "appropriate" and "inappropriate" to characterize their determinations of *discretionary* First Step Act relief for eligible defendants, when considered on the merits. *See, e.g.*, *United States v. Richardson*, 960 F.3d 761, 765 (6th Cir. 2020); *United States v. Marty Smith*, 959 F.3d 701, 702 (6th Cir. 2020) (per curiam); *United States v. Porter*, 425 F. Supp. 3d 974, 979 (E.D. Tenn. 2019); *United States v. King*, 423 F. Supp. 3d 481, 491 (M.D. Tenn. 2019); *United States v. Stone*, 416 F.

Supp. 3d 721, 735 (M.D. Tenn. 2019); *United States v. Powers*, 412 F. Supp. 3d 740, 743 (W.D. Mich. 2019).

Because the district court denied Boyd's sentence reduction on the merits, any potential errors regarding its eligibility finding are harmless. *See Flowers*, 963 F.3d at 497–98 (concluding the same). As such, we decline to address the parties' arguments regarding eligibility. *See BellSouth Telecomms., Inc. v. Farris*, 542 F.3d 499, 505 (6th Cir. 2008) ("[W]e . . . decide only what we must to resolve this dispute.").

Additionally, because we affirm the district court's denial, *see infra* Part II.C, for the purposes of the analysis below we assume without deciding that Boyd committed a covered offense under the Act.

C. **Procedural reasonableness of the district court's denial**

*1. Legal framework*

The First Step Act does not require "plenary resentencing" or a "de novo resentencing hearing." *Boulding*, 960 F.3d at 782–83. The district court, however, "is required to consider the sentencing factors under 18 U.S.C. § 3553(a)." *Ware*, 964 F.3d at 487. Additionally, the court must "provide a reasoned explanation . . . sufficiently thorough to permit meaningful appellate review." *Id.* (alteration in original) (quoting *United States v. Blackwell*, 459 F.3d 739, 773 (6th Cir. 2006)). Crucially, though, "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances[.]" *United States v. Lakento Smith*, 958 F.3d 494, 500 (6th Cir. 2020) (first alteration in original) (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018)). And what is true for full sentencings applies with "extra force in First Step Act cases," namely, that "a district court need not 'engage in a ritualistic incantation' of every § 3553(a) factor or 'make specific findings related to each of the factors.'" *United States v.*

*Barber*, 966 F.3d 435, 438 (6th Cir. 2020) (quoting *United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007)); *see also Ware*, 964 F.3d at 487.

Beyond that, "district courts are empowered to provide process and to consider resentencing factors as they see fit." *Boulding*, 960 F.3d at 783.

### 2. Application

Boyd contends that the district court's "cursory" order leaves this court "guessing" as to the grounds for its denial, and thus does not allow for "meaningful appellate review." Supp. Appellant Br. at 42; *id.* at 46 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). We disagree.

Here, the district court pointed to three reasons why reducing Boyd's sentence was "inappropriate." Order, R. 571, PageID 540. First: even under the FSA, Boyd would be subject to the exact same sentencing range for his crack cocaine offense as he was at initial sentencing. This is because his cocaine conspiracy conviction rested additionally and *independently* on a powder cocaine offense, which the FSA did not affect, *see* FSA § 2(a). Second: Boyd's life-plus-ten sentence was supported by two related homicide convictions and one firearm conviction, which of course the FSA did not alter. Indeed, the first-degree murder counts, not the cocaine offense, drove Boyd's guideline life sentence. Third: the district court found that Boyd had conspired to distribute "high amounts" of crack cocaine, namely 1.5 kilograms, which largely exceeded even the new, heightened threshold for a mandatory sentence under the FSA (280 grams). *See* Order, R. 571, PageID 540.

This explanation might be more cursory than ideal. But it suffices for our "meaningful . . . review." *Ware*, 965 F.3d at 487. The stated "circumstances of [Boyd's] particular case" provide an "intuitive reason" for the court's denial. *See Chavez-Meza*, 138 S. Ct. at 1965, 1967–68. And the "simplicity of *this* case," *id.* at 1967, is even more evident in light of the purpose of the First

Step Act and the FSA relevant here—to reduce disparities in sentencing between crack and powder cocaine offenses. Indeed, if a "barebones" form order completely devoid of *any* explanation is adequate in some circumstances, *see id.*, the district court's cursory explanation cannot constitute an abuse of discretion here. *Cf. Ware*, 964 F.3d at 486, 488–89 (holding, as to substantive reasonableness, that the district court did not abuse its discretion in denying First Step Act relief to a defendant whose sentence was driven by non-crack offenses).

Boyd further claims that the court abused its discretion by failing to consider some § 3553(a) factors, like the defendant's "history and characteristics" including his efforts towards rehabilitation, and by not expressly stating that it had in fact considered the § 3553(a) factors. Boyd is right that the district court must "consider" the § 3553(a) factors. *See Ware*, 964 F.3d at 487. But that does not mean it must expressly discuss them all, as long as it considers those most relevant to the sentence under the circumstances of that particular case. *See id.*; *Barber*, 966 F.3d at 438.

Here, the district court's three stated reasons, *see supra*, address the following § 3553(a) factors: (1) "the nature and circumstances of the offense"; (2)(A) "the need for the sentence imposed . . . to reflect the seriousness of the offense"; and (3) "the kinds of sentences available." *See* 18 U.S.C. § 3553(a). Again, in light of the purpose of the Act under which Boyd sought relief, the district court did not abuse its discretion by concluding that these three factors outweigh any others as the most relevant to its denial. In short, no further "ritualistic incantation" of the § 3553(a) factors was necessary here. *See Barber*, 966 F.3d at 438–39.

Boyd cites various cases requiring that a district court provide a more thorough explanation of its sentencing decision. *See, e.g.*, Supp. Appellant Br. at 42–43 (citing *United States v. Martin*, 916 F.3d 389 (4th Cir. 2019)); Additional Citation, Dkt. 27, Page 3 (discussing *Marty Smith*,

959 F.3d 701). However, none of these cases concern a denial of First Step Act relief where the guideline sentencing range for the defendant's covered cocaine offense was not only unaffected by the FSA, but also independently driven by two first-degree murder convictions. *Cf., e.g.*, *Martin*, 916 F.3d at 392 (FSA reduced minimum guideline sentence from life to 30 years); *Marty Smith*, 959 F.3d at 704 (the guideline sentence under the FSA was half the original sentence).

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.